[No. 3482.   Decided September 26, 1900.]

WASHOUGAL RIVER IMPROVEMENT & LOG DRIVING COM-
PANY, *Appellant,* v. SKAMANIA LOGGING COMPANY, *Re-
spondent.*

LOGS AND LOGGING—BOOM COMPANIES—RIGHT TO TOLL.

A boom company is not entitled to collect tolls for driving
the logs of another, under the authority of Bal. Code, § 4391,
providing therefor in case such logs obstruct or impede its drive,
when it appears that such logs did not intermingle with, or
obstruct, or impede the driving of the boom company's logs,
and that the work done by the boom company consisted in roll-
ing into the channel of the stream a portion of the logs which
had lodged along the banks, while the owner of such logs was
engaged at the same time in the same work, and had notified
the boom company not to handle the logs.

Appeal from Superior Court, Clarke County.—Hon.
ABRAHAM L. MILLER, Judge.   Affirmed.

*Coovert & Stapleton,* for appellant.

*Dell Stuart, E. B. Watson* and *W. W. McCredie,* for
respondent.

The opinion of the court was delivered by

FULLERTON, J.—The appellant is duly incorporated
under the laws of the state of Washington, relative to
the incorporation of boom companies (§§ 4378-4394, Bal.
Code), for the purpose of improving a part of the Wash-
ougal river lying in Skamania and Clarke counties, and
driving saw logs and other timber products thereon.   For
the purposes of this action, while it is questioned by
the respondent, it may be conceded that it has complied
with the law relative to its incorporation, so as to entitle
it to all the rights and privileges that a compliance with
such laws confers upon it.   In 1898 the respondent placed
a large number of saw logs—nearly 2,500,000 feet— in

the north fork of the Washougal river, intending to drive them down that fork to the main river, and from thence, about sixteen miles, to the mouth of the same, during the freshets of the coming winter season. The sixteen miles of the main river are within the boundaries of appellant's improvements. During the same season one Aldrich and others placed a large quantity of logs in the main stream above the mouth of the north fork, which the appellant was requested to drive. Prior to the first day of December, 1898, the respondent, with the aid of freshets and splashes from dams owned and operated by it on the north fork, flooded and drove out most of its logs into the main river, where the same lodged and scattered between that point and the mouth of the river. Afterwards the appellant proceeded to drive the logs of Aldrich and others, and in so doing claims to have driven certain of respondent's logs which obstructed and impeded its drive, and contends that it is entitled to collect as tolls on the whole thereof the sum fixed by its board of directors as reasonable charges for driving logs down the Washougal river; in this instance sixty cents per thousand feet, board measure. To secure the sum claimed, it filed a lien upon the logs, and brought this action to foreclose the same. The trial court found for the respondent, and this appeal is from the judgment entered thereon.

A corporation, organized for the purposes for which the appellant is incorporated, after having complied with the terms of the statute, is entitled to collect tolls for driving logs and other timber products upon a stream which it has improved, when such driving is done either at the request of the owners of the logs or other timber products, or, without such request, when the logs or other timber products lie in such a position as to obstruct or impede its own drive. Bal. Code, §4391. But this is as

far as the statute has gone.   The mere fact that a company has improved a stream does not give it the right to collect tolls upon logs of persons driving on the stream, who use their own forces and appliances.   We so held in the case of *Gray's Harbor Boom Co. v. McAmmant,* 21 Wash. 465 (58 Pac. 573),₀₀ and such seems to us now to be the correct construction of the statute.   It is conceded that the appellant was not requested to drive the respondent's logs, and that it was expressly notified not to do so.   Its right of recovery then depends upon what answer is given to the question, did the respondent's logs lie in such a position as to obstruct or impede the drive of the appellant?   As facts, the trial court found from the evidence that the vast bulk of respondent's logs went out of the river on a great natural freshet which occurred about the 20th of January, 1899, and that the remainder went out on some later floods occurring in the latter part of that month and in the month of February following, all without the use of any of appellant's improvements; that, while the appellant rolled into the channel of the stream, from points where they had lodged, certain of the respondent's logs, it did so after it had been notified not to drive the logs, and while the respondent was engaged in the same work; and, further, that these logs did not, nor did any of the logs of the respondent, intermingle with or obstruct or impede the driving of any logs by the appellant.   The evidence at the trial was voluminous, and an analysis of it would serve no useful purpose.   A careful examination of the record. however, has convinced us that the findings are in accordance with the weight of the evidence.   It follows therefrom that the judgment of the trial court should be affirmed, and it is so ordered.

DUNBAR, C. J., and REAVIS and ANDERS, JJ., concur.